LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin (*pro hac vice* to be filed)
Email: jselbin@lchb.com
Douglas I. Cuthbertson
(*pro hac vice* to be filed)
Email: dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice* to be filed)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

MEYER WILSON CO., LPA
Matthew R. Wilson (Ohio State Bar No.
0072925; admitted to the N.D. Ill. general bar)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice* to be filed)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

MAROVITCH LAW FIRM, LLC
Daniel J. Marovitch (State Bar. No. 6303897)
Email: dmarovitch@marovitchlaw.com
233 S. Wacker Dr., 84th Floor,
Chicago, IL 60606
Telephone: (312) 533-1605
Facsimile: (312) 488-4206

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAWN MATEJOVICH, CHRIS STOCK, STUART BENSON, BRENNAN LANDY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN AUTOMOBILE ASSOCIATION, INC.<br><br>Defendant,<br><br><br>FARMERS GROUP, INC. (D/B/A FARMERS UNDERWRITERS ASSOCIATION),<br><br>Defendant, | **Case No. 1:13-cv-7149**<br><br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ.* (TELEPHONE CONSUMER PROTECTION ACT)**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

1130828.10

GOVERNMENT EMPLOYEES
INSURANCE COMPANY (D/B/A
GEICO),

Defendant,

NATIONWIDE MUTUAL INSURANCE
COMPANY,

Defendant,

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

Defendant,

and

VARIABLE MARKETING, LLC,

Defendant.

Plaintiffs Shawn Matejovich (hereinafter referred to as "Matejovich"), Chris Stock

(hereinafter referred to as "Stock"), Stuart Benson (hereinafter referred to as "Benson"), and

Brennan Landy (hereinafter referred to as "Landy") (hereinafter collectively referred to as

"Plaintiffs"), individually and on behalf of all others similarly situated, allege on personal

knowledge, investigation of their counsel, and on information and belief as follows:

## NATURE OF ACTION

1.       This case involves a scheme by a number of insurance companies (and by and

through their agents) to market their services through use of a lead-generator marketing company

in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (hereinafter

referred to as the "TCPA").  As described more fully below, the defendant insurance companies

have made, and are continuing to make, a high volume of illegal calls through a lead-generator marketing company.  On information and belief, the marketing company, working on behalf of each insurance company defendant, directs consumers to a specific insurance company defendant, based upon predetermined factors and information gained from the consumer at the time of the call.

2.      Plaintiffs bring this action for statutory damages and injunctive relief under the TCPA, all arising from the illegal actions of the American Automobile Association, Inc. (hereinafter referred to as "AAA"), Farmers Group, Inc. (d/b/a Farmers Underwriters Association)  (hereinafter referred to as "Farmers"), Government Employees Insurance Company (d/b/a GEICO) (hereinafter referred to as "GEICO"), Nationwide Mutual Insurance Company (hereinafter referred to as "Nationwide"), State Farm Mutual Automobile Insurance Company (hereinafter referred to as "State Farm"), together with their agents, (hereinafter collectively referred to as "Insurance Company Defendants"), and Variable Marketing, LLC ("Variable") (hereinafter referred to, along with the Insurance Company Defendants, as "Defendants").

3.      Together, these Defendants contacted, and/or caused to be contacted on their behalf, Plaintiffs and Class Members on their cellular telephones without their prior express consent within the meaning of the TCPA.   Defendants violated the TCPA by contacting Plaintiffs and Class Members on their cellular telephones for non-emergency purposes via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or by using "an artificial or prerecorded voice" as described in 47 U.S.C. §227(b)(1)(A),  without Plaintiffs' and Class Members' prior express consent within the meaning of the TCPA.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2).  The matter in

controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiffs allege a national class, which will result in at least one Class member from a different state.

5.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

6.      This Court has personal jurisdiction over AAA because, as the company is licensed to and does conduct the business of insurance in the State of Illinois, it has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Illinois.

7.      This Court has personal jurisdiction over Farmers because, as the company is licensed to and does conduct the business of insurance in the State of Illinois, it has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Illinois.

8.      This Court has personal jurisdiction over GEICO because, as the company is licensed to and does conduct the business of insurance in the State of Illinois, it has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Illinois.

9.      This Court has personal jurisdiction over Nationwide because, as the company is licensed to and does conduct the business of insurance in the State of Illinois, it has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Illinois.

10. This Court has personal jurisdiction over State Farm because the company is licensed to and does conduct the business of insurance in the State of Illinois and because State Farm's corporate headquarters are located in Illinois. It therefore has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Illinois.

11. This Court has personal jurisdiction over Variable because the conduct at issue in this case occurred, among other locations, in Illinois.

12. Venue is proper in the United States District Court for the Northern District of Illinois because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction. *See* 28 U.S.C. § 1391.

## **PARTIES**

13. Plaintiff Shawn Matejovich is, and at all times mentioned herein was, an individual citizen of the State of Ohio, who resides in Galena, Ohio.

14. Plaintiff Chris Stock is, and at all times mentioned herein was, an individual citizen of the State of Ohio, who resides in West Chester, Ohio.

15. Plaintiff Stuart Benson is, and at all times mentioned herein was, an individual citizen of the State of Ohio, who resides in Columbus, Ohio.

16. Plaintiff Brennan Landy is, and at all times mentioned herein was, an individual citizen of the State of Pennsylvania, who resides in Ardmore, Pennsylvania.

17. AAA is a federation of motor clubs operating throughout the United States. Its corporate headquarters is in Heathrow, Florida.

18. Farmers provides administrative services, pursuant to a power of attorney, on behalf of a collection of inter-insurance exchanges formed under the laws of the State of

California.  Farmers is a Nevada corporation with its corporate headquarters in Los Angeles, California.

19.     GEICO is an insurance company with its corporate headquarters in Chevy Chase, Maryland.

20.     Nationwide is the parent company of a series of interrelated insurance and financial services companies.   Nationwide is an Ohio corporation with corporate headquarters in Columbus, Ohio.

21.     State Farm is the parent company of a series of interrelated insurance and financial services companies.  State Farm is a Delaware corporation with corporate headquarters in Bloomington, Illinois.

22.     Variable is a limited liability company formed under the laws of California with its corporate headquarters in Los Angeles, California.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

23.     In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

24.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."

25.     Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

26.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

27.     The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

28.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party.[3]

29.     In that same ruling, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *Id.* (specifically recognizing "on behalf of" liability in the context of a an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)).

30.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

31.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[3] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 564-65 (¶ 10), 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[4]

32.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 F.C.C.R. at 6586 (¶ 34).

33.     The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at n.107.

34.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or

---

[4] In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al., CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

reasonably should have known) that the telemarketer was violating the TCPA on

the seller's behalf and the seller failed to take effective steps within its power to

force the telemarketer to cease that conduct.

28 F.C.C.R. at 6592 (¶ 46).

35.     The Insurance Company Defendants are legally responsible for ensuring that

Variable complied with the TCPA, even if the Insurance Company Defendants' did not

themselves make the calls.

36.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence

of these kinds of relationships . . . through discovery, if they are not independently privy to such

information. " *Id.* at 6592-93 (¶ 46).  Moreover, evidence of circumstances pointing to apparent

authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden

of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer

was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## FACTUAL ALLEGATIONS

### Plaintiff Matejovich

37.     Plaintiff Matejovich is, and at all times mentioned herein was, a "person" as

defined by 47 U.S.C. § 153(39).

38.     On August 9, 2013, Matejovich received a telephone call to his cell phone from

telephone number (614) 656-4949.  The 614 area code is Matejovich's home area code.  The

caller left a pre-recorded message on Matejovich's voicemail informing him of an opportunity to

receive an automobile insurance quote.

39.     On information and belief, Variable placed this call using a 614 area code

telephone number in order to make the call appear to be coming from Matejovich's home area.

- 9 -

40.     When Matejovich returned the call, he heard a pre-recorded voice message informing him that "State Farm, Nationwide, and Farmers are competing for your business, and you can save several hundred dollars on your car insurance."

41.     Matejovich remained on the line, and was eventually connected to a live operator. This operator did not disclose what organization or entity she worked for or represented.

42.     This operator took down personal information from Matejovich, such as his name, address, date of birth, type of vehicles owned, and driving history.

43.     The operator informed Matejovich that he could receive a quote from State Farm for his car insurance needs, and that he would be connected to a State Farm agent for that quote.

44.     Plaintiff was then connected with Jimmy McDowall, who identified himself as a State Farm agent working in the office of Shane Tressler, located at 6075 Chandler Court, Westerville, Ohio.  Mr. McDowall asked Matejovich to confirm information that he had provided to the operator previously.  Mr. McDowall confirmed that his agency worked exclusively with State Farm, and that a visitor to his office would know they were in the right place "when you see the big State Farm sign out front."

45.     Matejovich is not a current customer of State Farm, nor of any of the other Defendants, and has no pre-existing business relationship as that term is used for TCPA purposes with any of the Defendants prior to the call.

**Plaintiff Stock**

46.     Plaintiff Stock is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

47.     On September 6, 2013, Stock received a telephone call to his cell phone from telephone number (614) 656-4949.  Stock recognized the 614 area code as the area code for central Ohio, where he used to reside.  In the previous few weeks, Stock had received several

other calls on his cell phone from this same number. The caller left a pre-recorded message on Stock's voicemail informing him of an opportunity to receive an automobile insurance quote.

48. On information and belief, Variable placed this call using a 614 telephone number in order to make the call appear to be coming from the Central Ohio area. On information and belief, this call was made with an automated dialer, given Variable's practice of calling thousands (or more) or numbers.

49. Fed up with the repeated calls on his cell, Stock returned the call. He was eventually connected to a live operator. After questioning from Stock, the operator disclosed that she worked for the "Auto Insurance Placement Center." On information and belief, the "Auto Insurance Placement Center" is not an independent business entity, but instead one of several alter egos used by Variable.

50. Stock asked the operator which insurance companies the operator was working on behalf of, and was told "oh, several of the big ones, including Geico and AAA."

51. When Stock attempted to ask further questions of the operator regarding the identity of the insurers, the operator hung up on him. Stock did not receive an auto insurance quote.

52. Stock is a current customer of Nationwide, but not of any other Defendants, and had no pre-existing business relationship as that term is used with respect to the TCPA with any of the Defendants, other than Nationwide, prior to the call. He did not give any of the Defendants his prior express consent to be called on his cell phone using an automated dialer or a prerecorded message.

**Plaintiff Benson**

53. Plaintiff Benson is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

54.     On September 6, 2013, Benson received a telephone call to his cell phone from telephone number (614) 656-4949.  The 614 area code is Benson's home area code.  Benson did not pick up the call.

55.     On information and belief, Variable placed the call from the 614 area code in order to make the call appear to be coming from the Central Ohio area.

56.     When Benson returned the call, he heard a pre-recorded voice message informing him that "State Farm, Nationwide, and Farmers are competing for your business, and you can save several hundred dollars on your car insurance."

57.     Benson remained on the line, and was eventually connected to a live operator.  This operator did not disclose what organization or entity she worked for or represented.

58.     This operator took down personal information from Benson, such as his name, address, date of birth, type of vehicles owned, and driving history.

59.     The operator informed Benson that he could receive a quote from Nationwide for his car insurance needs, and that he would be connected to a Nationwide agent for that quote.

60.     Benson was then connected with "Stacy from Nationwide Insurance."  "Stacy" represented that she would provide a "bundled" quote containing both automobile and homeowners insurance.  "Stacy" represented that she would call Benson back at a later date with that quote.

61.     Benson is not a current customer of Nationwide, nor of any of the other Defendants, and had no pre-existing business relationship as that terms is used for TCPA purposes with any of the Defendants prior to the call.

**Plaintiff Landy**

62.     Plaintiff Landy is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

63.     On August 12, 2013, Landy received a telephone call to his cell phone from telephone number (215) 987-6048.  The 215 area code is local to Landy's home area.  Mr. Landy answered the call and heard a recorded message that informed him of an opportunity to receive an automobile insurance quote.  Mr. Landy did not receive a quote on this call.

64.     On information and belief, Variable placed the call using a 215 area code telephone number in order to make the call appear to be coming from the Landy's home area.

65.     When Landy returned the call, the following automated message played:

> Para Español, oprima numero ocho.  Hi, this is Mary.  Auto insurance companies like State Farm, Nationwide, and Farmers are competing for your business because our local auto insurance rates just went down this week.  Press "1" to speak with me, and I'll give you a new quote right now, and save you several hundred dollars on your policy.  Pressing just one button can save you money.  So, press "1" to get the best coverage at the best price right now.

66.     When Landy spoke with a representative, that representative informed him that they were calling for "Farmers, State Farm and Nationwide."

67.     This same representative informed Landy that an insurance agent in his area would call him back.

68.     Plaintiff then received a call from (267) 437-3040 and an individual named "Leo," a Nationwide insurance agent who, when asked, identified his work address as 8919 Ridge Avenue, Suite 10, in Philadelphia, Pennsylvania.

69.     Upon information and belief, Leo is Leo Bradley, an associate agent with Joseph DeFinis, Inc., a Nationwide On Your Side® Certified Agency.

70.     Landy is not a current customer of Nationwide, and has no pre-existing business relationship as that term is used for TCPA purposes with any of the Defendants prior to the call.

**Defendants**

71.    AAA is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39)

72.    Farmers is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

73.    GEICO is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39)

74.    Nationwide is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

75.    State Farm is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

76.    Variable is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39)

77.    Upon information and belief, the Insurance Company Defendants oversee and control their agents' actions generally, but particularly with respect to telemarketing.

78.    Upon information and belief, the Insurance Company Defendants directly solicited business using Variable and authorized their agents to solicit business using Variable.

**Actual Authority**

79.    Upon information and belief, each of the Insurance Company Defendants and their agents has contracted with Variable to employ an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), to contact customers such as Plaintiffs. At least some of those calls, such as all the calls to Plaintiffs, are made to cellular telephones.

80.    Upon information and belief, Insurance Company Defendants and their agents have contracted with Variable to employ "an artificial or prerecorded voice" as described in 47

U.S.C. § 227(b)(1)(A) to communicate with customers such as Plaintiffs on their cellular telephone.

81.     Each of the telephone numbers that Variable, acting on behalf of the Insurance Company Defendants, called to contact Plaintiffs with an "artificial or prerecorded voice" made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. §  227(b)(1)(A)(iii).

82.     Plaintiffs did not provide their "prior express consent" allowing Variable or the Insurance Company Defendants to place telephone calls to Plaintiffs' cellular phones utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

83.     Variable, acting on behalf of the Insurance Company Defendants, did not make telephone calls to Plaintiffs' cellular phones "for emergency purposes" utilizing an "artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

84.     Variable, acting on behalf of the Insurance Company Defendants, did not employ an "automatic telephone dialing system," to make telephone calls to Plaintiffs' cellular phones "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

85.     The calls made by Variable, acting on behalf of the Insurance Company Defendants, to Plaintiffs' cellular phones utilizing an "artificial or prerecorded voice" for non-emergency purposes and in the absence of Plaintiffs' prior express consent to the any of the Defendants, violated 47 U.S.C. §  227(b)(1)(A).

86.     Likewise, the calls made by Variable, acting on behalf of the Insurance Company Defendants, to Plaintiffs' cellular phones placed by an "automatic telephone dialing system" for

non-emergency purposes and in the absence of Plaintiffs' prior express consent, violated 47 U.S.C. § 227(b)(1)(A).

87.     Under the TCPA, the burden is on the Defendants to demonstrate that Plaintiffs and Class members provided prior express consent within the meaning of the statute.[5]

88.     The Defendants acted willfully, knowingly, and without regard to the TCPA when it initiated the calls described above.

89.     As the Defendants acted in concert to place the illegal calls in violation of the TCPA, liability for these violations is joint and several among all Defendants.

**Apparent Authority**

90.     The artificial voice used by Variable at the beginning of some of the calls informed customers that "State Farm, Nationwide, and Farmers" would be making automobile insurance quotes to customers who stayed on the line.  Similarly, a representative of Variable told Stock that he was acting on behalf of "lots of the big [insurance companies], including Geico and AAA."  Thus, Variable, upon information and belief, had authority to use the Insurance Company Defendants' "trade name, trademark and service mark[s]," as discussed in the May 2013 FCC Ruling.  As such, Variable is an apparent agent of each of the Insurance Company Defendants.

91.     Upon information and belief, Insurance Company Defendants' contracts with Variable call for responding callers to be directed to specific local insurance agents of the Insurance Company Defendants based on predetermined criteria, such the customer's geographic and/or customer profile.  Thus, while, for instance, Matejovich was directed to a State Farm

---

[5] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

agent and Benson was directed to a Nationwide agent, other similarly situated individuals would be directed to agents of Farmers, AAA or GEICO for a similar quote.

92.     By providing information to Variable in order that Variable could properly route responding customers to the proper agents, Insurance Company Defendants "allow[ed] the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including . . . access to detailed information regarding the nature and pricing of the seller's products," as discussed in the May 2013 FCC Ruling.  As such, Variable is an apparent agent of each of the Insurance Company Defendants.

93.     Variable transferred customer information, including the Plaintiffs' information, directly to local insurance agents.  Thus, Variable has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.  As such, Variable is an apparent agent of each of the Insurance Company Defendants.

94.     By hiring Variable to make calls on behalf of its agents to generate sales leads, the Insurance Company Defendants "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.  Similarly, by accepting these contacts, Variable "manifest[ed] assent or otherwise consent[ed]  . . . to act" on behalf of the Insurance Company Defendants, as described in the Restatement (Third) of Agency.  As such, Variable is an agent of each of the Insurance Company Defendants.

**Ratification**

95.     In the alternative, the Insurance Company Defendants and their agents repeatedly ratified Variable's illegal marketing scheme by knowingly accepting the benefits of Variable's

activities when they accepted leads from Variable. These leads provided the Insurance Company Defendants and their agents with additional business prospects.

96.     Upon information and belief, the Insurance Company Defendants and their agents were aware of Variable's marketing scheme and that Variable was making calls using an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" when they accepted the marketing leads from Variable.

## CLASS ACTION ALLEGATIONS

97.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

98.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

99.     Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> All persons within the United States who received a non-emergency telephone call from Variable, placed while Variable was acting on behalf of the Insurance Company Defendants, to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice.

Collectively, all these persons will be referred to as "Class members." Plaintiffs represent, and are members of, the Class.

100.     Excluded from the Class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

101.    Plaintiffs do not know the exact number of members in the Class, but Plaintiffs reasonably believe Class members number, at minimum, in the thousands.

102.    Plaintiffs and all members of the Class have been harmed by the acts of the Defendants.

103.    This Class Action Complaint seeks injunctive relief and money damages.

104.    The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

105.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

106.    Further, the Class can be identified easily through records maintained by the Insurance Company Defendants and/or their telemarketing agents.

107.    There are well defined, nearly identical, questions of law and fact affecting all parties.

108.    The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

109.    Such common questions of law and fact include, but are not limited to, the following:

            a.      Whether Variable, acting on behalf of the Insurance Company Defendants, used an automatic telephone dialing system in making non-emergency calls to Class members' cell phones;

            b.      Whether Variable, acting on behalf of the Insurance Company Defendants, used an artificial or prerecorded voice in its non-emergency calls to Class members' cell phones;

c.      Whether the Defendants can meet their burden of showing they obtained

prior express consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such

calls;

d.      Whether the Defendants' conduct was knowing and/or willful;

e.      Whether the Defendants are liable for statutory damages; and

f.      Whether the Defendants should be enjoined from engaging in such

conduct in the future.

110.    As persons who received non-emergency telephone calls using an automatic

telephone dialing system or an artificial or prerecorded voice, without their prior express consent

to the Defendants within the meaning of the TCPA, Plaintiffs assert claims that are typical of

each Class member who also received such phone calls.

111.    Further, Plaintiffs will fairly and adequately represent and protect the interests of

the Class.

112.    Plaintiffs have no interests which are antagonistic to any member of the Class.

113.    Plaintiffs have retained counsel experienced in handling class action claims

involving violations of federal consumer protection statutes, including claims under the TCPA.

114.    A class action is the superior method for the fair and efficient adjudication of this

controversy.

115.    Class wide relief is essential to compel the Defendants to comply with the TCPA.

116.    The interest of the Class members in individually pursuing claims against the

Defendants is slight because the statutory damages for an individual action are relatively small,

and are therefore not likely to deter the Defendants from engaging in the same behavior in the

future.

117.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize such calls to their cellular telephones.

118.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

119.     Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

## FIRST COUNT

## STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

120.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

121.     The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

122.     As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

123.     Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

124.    Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

125.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

126.    The foregoing acts and omissions of the Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

127.    As a result of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

128.    Plaintiffs and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendants in the future.

129.    Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all Class members the following relief against the Defendants:

A.      Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

B.      As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided

by statute, of up to $1,500 for each and every call that violated the TCPA, to be paid jointly and severally by the Defendants as a group;

C.       As a result of Defendants' statutory violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member $500 in statutory damages for each and every call that violated the TCPA, to be paid jointly and severally by the Defendants as a whole;

D.       An award of attorneys' fees and costs to counsel for Plaintiffs and the Class, to be paid jointly and severally by the Defendants as a whole;

E.       An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiffs are a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class;

F.       Such other relief as the Court deems just and proper.


Dated: October 4, 2013                    By:   _/s/ Matthew R. Wilson_____

                                          MEYER WILSON CO., LPA
                                          Matthew R. Wilson (Ohio State Bar No. 0072925;
                                          admitted to the N.D. Ill. general bar)
                                          Email:  mwilson@meyerwilson.com
                                          Michael J. Boyle, Jr. (*pro hac vice* to be filed)
                                          Email:  mboyle@meyerwilson.com
                                          1320 Dublin Road, Ste. 100
                                          Columbus, Ohio 43215
                                          Telephone:  (614) 224-6000
                                          Facsimile:  (614) 224-6066

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin (*pro hac vice* to be filed)
Email: jselbin@lchb.com
Douglas I. Cuthbertson
(*pro hac vice* to be filed)
Email: dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592


LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice* to be filed)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

MAROVITCH LAW FIRM, LLC
Daniel J. Marovitch (State Bar. No. 6303897)
Email: dmarovitch@marovitchlaw.com
233 S. Wacker Dr., 84th Floor,
Chicago, IL 60606
Telephone: (312) 533-1605
Facsimile: (312) 488-4206


*Attorneys for Plaintiffs and the Proposed Class*

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts so triable.

Dated: October 4, 2013              By:     _/s/ Matthew R. Wilson_

MEYER WILSON CO., LPA
Matthew R. Wilson (Ohio State Bar No. 0072925;
admitted to the N.D. Ill. general bar)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice* to be filed)
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin (*pro hac vice* to be filed)
Email:  jselbin@lchb.com
Douglas I. Cuthbertson
(*pro hac vice* to be filed)
Email: dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice* to be filed)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

MAROVITCH LAW FIRM, LLC
Daniel J. Marovitch (State Bar. No. 6303897)
Email: dmarovitch@marovitchlaw.com
233 S. Wacker Dr., 84th Floor,
Chicago, IL 60606
Telephone: (312) 533-1605
Facsimile:  (312) 488-4206

*Attorneys for Plaintiffs and the Proposed Class*